**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **In re:** | : | |
| | : | **Case No. 26-51755-JWC** |
| **SOUTHLAND MANUFACTURING, INC.,** | : | |
| | : | **SubChapter V Chapter 11** |
| **Debtor,** | : | |
| | : | |

**SOUTHLAND MANUFACTURING, INC.'S**
**FIRST AMENDED SUBCHAPTER V CHAPTER 11 PLAN OF REORGANIZATION**

**Dated this 22nd day of September, 2026**

---

Filed by:

**B SOUTHLAND MANUFACTURING, INC.**

PAUL REECE MARR, P.C.
Attorney for Southland Manufacturing, Inc.
Paul Reece Marr, Esq.
6075 Barfield Road
Suite 213
Sandy Springs, GA 30328
Telephone: 770-984-2255
Email: paul.marr@marrlegal.com

COMES NOW Southland Manufacturing, Inc. (the **"Debtor")**, the debtor and debtor in possession in the above-captioned bankruptcy case, and, pursuant to sections 1123, 1189, and 1190 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 3016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), proposes this First Amended SubChapter V Chapter 11 Plan of Reorganization (the "**Plan**") for the resolution of the Claims against the Debtor. The Debtor is the proponent of this Plan within the meaning of section 1129 of the Bankruptcy Code. This Plan amends the SubChapter V Chapter 11 Plan of Reorganization filed on May 11, 2026 [Doc. No. 48].

## ARTICLE 1
## CONTENTS OF THE PLAN; REQUIRED DISCLOSURES

**1.1** ***Subchapter V Plan of Reorganization***.

This Plan is filed under Subchapter V of Chapter 11 of the Bankruptcy Code.

**1.2** ***History of the Debtor's Business Operations and Procedural Background***.

Robert S. Yancey formed the Debtor in the State of Georgia on January 29, 1996. The Debtor is a custom metal fabricator located conducting business in Douglasville, Georgia in leased premises having a local address of 8960 Highway 5, Bldg B, Douglasville, Georgia 30134. The Debtor currently operates with seven W-2 employees. Gross revenue in year 2025 was approximately $2,000,000.00.

The Debtor has in general been profitable from its inception. However, Synovus Bank informed the Debtor that it would not renew the company's line of credit. Use of a credit line was essential for orderly operation of the business. Accordingly, the Debtor sought an alternative credit line of credit. The Debtor was approached by a third party who informed the Debtor that he could assist the Debtor in obtaining a line of credit, but that it would take some time. In the meantime, the Debtor was encouraged to enter into a series of merchant cash advance loans pending being able to obtain a line of credit. The Debtor did enter into a series of merchant cash advance loans, the repayment terms proved to be increasingly onerous, and the line of credit never materialized. The Detar defaulted in payments and the merchant cash advance lenders levied on the Debtor's accounts receivable. In order to manage the collection efforts of various creditors and restructure its finances, the Debtor filed its SubChapterV Chapter 11 Bankruptcy Petition on January 29, 2025.

**2. Post-Petition events.** The following events occurred post-Petition:

- Leon S. Jones was appointed SubChapter V Trustee.
- In accordance with Sections 1107 and 1108 of the Bankruptcy Code, the Debtor continues to operate its business in all respects as a debtor in possession.
- The Debtor filed emergency motions seeking Court orders authorizing use of cash collateral in order to funds its business operations, to pay pre-Petition payroll, and to maintain pre-Petition bank accounts for a limited time period pending being able to open Debtor in Possession checking accounts. Hearings were held on the emergency motions and orders have been entered approving the emergency motions.
- The law firm of Paul Reece Marr, P.C. filed its application for entry of a Court order authorizing the Debtor to retain the Law Firm as its bankruptcy counsel and the Court entered an order approving the application.
- The Initial Debtor Interview was conducted and concluded on February 19, 2026 by the United States Trustee's Office.
- The Meeting of Creditors required by§ 341 (a) of the Bankruptcy Code was conducted and concluded on March 4, 2026 by the United States Trustee's Office.
- The Status Conference required by§ 1188(a) of the Bankruptcy Code was held on April 2, 2026.
- The deadline for filing a proof of claim for all creditors (except a governmental unit) is April 20, 2026.
- The deadline for the Debtor to file its proposed Chapter 11 SubChapter V Plan of Reorganization is May 11, 2026 unless the deadline is extended by order of the Court.

**1.3 Current Management and Insiders.**

**1.3.1** **<u>Directors and Officers</u>**: Robert S. Yancey is the sole shareholder, CEO, and CFO. Mr. Yancey's wife Tammy F. Yancey is the Secretary. No change in the ownership and management of the Debtor is anticipated post-confirmation.

**1.3.2** **<u>Insiders Employed by the Debtor</u>**: The Debtor's CEO and sole shareholder Robert S. Yancey, his wife Tammy Yancey, and son Jordan Yancey are W-2 compensated

employees, provide valuable services for the Debtor. They are the only insiders on the payroll. It is anticipated that this structure will remain the same post-confirmation.

**1.4 Liquidation Analysis.**

As outlined below, and depending on lien priorities held by creditors holding Secured Claims, in a hypothetical liquidation of the Debtor's assets there would be a relatively nominal Distribution to creditors holding Secured Claims but no other creditors would receive a Distribution.

**Assets:** The liquidation value of the Debtor's assets is estimated as follows:

| Asset | Estimated Value |
|---|---|
| Checking account balances | $20,000.00 |
| Accounts receivable | 75,000.00 |
| Equipment | 200,000.00 |
| Inventory | 35,000.00 |

Total Asset Value $330,000.00

**Liabilities:** Upon information and belief, creditors assert Claims against the Debtor in the approximate amount as follows:

| | |
|---|---|
| Secured Claims | $1,140,971.76 |
| Priority Tax Claims | $21,942.63 |
| General Unsecured Claims | $476,395.15 |

Total Claims $1,639,309.54

**Liquidation Proceeds**:

Based on the above analysis, it appears that in a forced liquidation there would be a nominal Distribution to Secured claimants but no Distributions to any other creditors. Moreover, this does not even contemplate any post-Petition payables, the administrative claims of the Debtor's professionals, the SubChapter V trustee fees, and the fees incurred by a hypothetical chapter 7 trustee.

Assets disposed of by "liquidation" or "fire" sale generally generate significantly less proceeds than assets that are marketed and sold as a going concern. Additionally, a Chapter 7 trustee would incur trustee's fees pursuant to § 326(a) or § 330 of the Bankruptcy Code. The Debtor estimates that a hypothetical chapter 7 trustee would incur approximately $5,000.00 of administrative expense.

The above liquidation analysis demonstrates that the Plan is in the best interest of creditors. Holders of Allowed Claims will receive more under the Plan than they would if the Debtor's bankruptcy case was converted to chapter 7 of the Bankruptcy Code. Clearly the Plan is in the best interest of creditors. The Debtor is worth more to creditors as an ongoing enterprise as opposed to a forced liquidation.

**1.5** ***Alternative Confirmation Standards Under Section 1191(a) and (b)***. The Debtor seeks to confirm this Plan by obtaining the consent of all Classes provided for in this Plan by a majority in number and two-thirds in amount of Allowed Claims actually voting. If the Debtor succeeds in obtaining the consent of all Classes, then the provisions of the Plan referencing and operating under section 1191(a) of the Bankruptcy Code will apply. If the Debtor is unable to obtain the consent of all Classes, then the Debtor requests that the Court confirm the Plan under 1191(b). In this case, the provisions of the Plan referencing and operating under section 1191(b) of the Bankruptcy Code will apply.

**1.6** ***Property and Claims***. This Plan deals with all property of the Debtor and provides for treatment of all Claims against the Debtor and its properties.

## ARTICLE 2
## DEFINITIONS AND GENERAL PROVISIONS

For the purposes of this Plan, except as otherwise expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in this Article of the Plan. Any term that is not defined herein but is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning ascribed to that term therein.

**2.1** ***Definitions***. The following terms, when used in this Plan, shall have the following meaning:

**2.1.1 "*Administrative Expense Claim*"** means a Claim for payment of an administrative expense entitled to priority under section 507(a)(2) of the Bankruptcy Code.

**2.1.2 "*Allowed Claim*"** shall mean a Claim or any portion thereof that is enforceable against the Debtor or enforceable against the property of the Debtor under sections 502 or 503 of the Bankruptcy Code.

**2.1.3 "*Allowed Secured Claim*"** shall mean the amount of the allowed Claim held by parties secured by property of the Debtor which is equal to the amount provided by the Plan unless such other amount is stipulated as constituting the allowed secured claim between the parties, or such amount as the Bankruptcy Court allows.

**2.1.4 "*Allowed Unsecured Claim*"** shall mean Allowed Claims which are not allowed administrative, priority, or secured claims.

**2.1.5 "*Assets*"** means, collectively, all of the property, as defined by section 541 of the Bankruptcy Code, of the Estate of the Debtor (including without limitation, all of the of the assets, property, interests (including equity interests) and effects, real and personal, tangible and intangible, including all Avoidance Actions), wherever situated as such properties exist on the Effective Date or thereafter.

**2.1.6 "*Avoidance Action*"** means any claim or cause of action of the Estates arising out of or maintainable pursuant to sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code or any other similar applicable law, regardless of whether such action has been commenced prior to the Effective Date.

**2.1.7 "*Ballot*"** means each of the ballot forms that are distributed with the Plan to Holders of Claims included in the Classes that are Impaired under this Plan and are entitled to vote.

**2.1.8 "*Bankruptcy Case*"** means the chapter 11 case initiated by the Debtor filing on the Filing Date of a voluntary petition for relief in the Bankruptcy Court under Chapter 11 of the Bankruptcy Code.

**2.1.9 "*Bankruptcy Code*"** means title 11 of the United States Code.

**2.1.10 "*Bankruptcy Court*"** means the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division.

**2.1.11 "*Bankruptcy Rules*"** means, collectively, the Federal Rules of Bankruptcy Procedure.

**2.1.12 "*Business Day*"** means any day on which the commercial banks are required to be open for business in Atlanta, Georgia and which is not a weekend or legal holiday

recognized by the Bankruptcy Court or the Superior Courts of the State of Georgia.

**2.1.13 "*Cash*"** means legal tender of the United States of America and equivalents thereof.

**2.1.14 "*Causes of Action*"** means all Avoidance Actions and any and all of the Debtor's actions, suits, accounts, agreements, promises, rights to payment and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured, and whether asserted or assertable directly or derivatively, in law, equity, or otherwise.

**2.1.15 "*Chapter 11*"** means chapter 11 of the Bankruptcy Code.

**2.1.16 "*Chapter 11 Case*"** means this case under chapter 11 of the Bankruptcy Code in which the Debtor is a Debtor in Possession.

**2.1.17 "*Claim*"** means a claim against the Debtor whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

**2.1.18 "*Classes*"** means a category of Claims described in this Plan.

**2.1.19 "*Confirmation Date*"** means the date on which the Bankruptcy Court enters the Confirmation Order.

**2.1.20 "*Confirmation Hearing*"** means the hearing before the Bankruptcy Court held to consider confirmation of this Plan and related matters under section 1191 of the Bankruptcy Code, as such hearing may be continued.

**2.1.21 "*Confirmation Order*"** means the order confirming this Plan pursuant to section 1191 of the Bankruptcy Code that the Bankruptcy Court enters, which shall be in all respects reasonably acceptable to the Debtor.

**2.1.22 "Debtor"** shall mean Southland Manufacturing, Inc., the debtor in this Bankruptcy Case.

**2.1.23 "*Disallowed Claim*"** means a Claim or any portion thereof that: (i) has been disallowed by a Final Order, (ii) is listed in the Debtor's Schedules at $0.00, unknown, contingent, disputed, or unliquidated and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court, or (iii) is not listed in the Debtor's Schedules and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court.

**2.1.24 "*Disputed Claim*"** means, with reference to any Claim, a Claim or any

portion thereof, that is the subject of an objection timely filed in the Bankruptcy Court and which objection has not been withdrawn, settled or overruled by a Final Order of the Bankruptcy Court.

**2.1.25 "*Distribution*"** means any distribution by the Debtor or the Reorganized Debtor to a Holder of an Allowed Claim.

**2.1.26 "*District Court*"** means the United States District Court for the Northern District of Georgia.

**2.1.27 "*Effective Date*"** means the later of (i) 30 days after entry of the Confirmation Order or (ii) the first Business Day the Confirmation Order is not subject to appeal or stay and is otherwise in full force and effect.

**2.1.28 "*Estate*"** means, with regard to the Debtor, the estate that was created by the commencement by the Debtor of the Bankruptcy Case pursuant to section 541 of the Bankruptcy Code, and shall be deemed to include, without limitation, any and all rights, powers, and privileges of the Debtor and any and all interests in property, whether real, personal or mixed, rights, causes of action, avoidance powers or extensions of time that the Debtor or such estates shall have had as of the commencement of the Bankruptcy Case, or which such Estate acquired after the commencement of the Bankruptcy Case, whether by virtue of sections 541, 544, 545, 546, 547, 548, 549 or 550 of the Bankruptcy Code, or otherwise as provided by sections 541 and 1115 of the Bankruptcy Code.

**2.1.29 "*Executory Contract or Unexpired Lease*"** means all executory contracts and unexpired leases to which the Debtor is a party.

**2.1.30 "*Filing Date*"** means January 9, 2026, being the date that the Debtor filed its chapter 11 bankruptcy petition for relief.

**2.1.31 "*Final Distribution*"** means the Distribution by the Debtor or Reorganized Debtor that satisfies all Allowed Claims to the extent provided in accordance with the Plan.

**2.1.32 "*Final Distribution Date*"** means the Distribution Date on which the Final Distribution is made.

**2.1.33 "*Final Order*"** means an order of the Bankruptcy Court, the District Court, or any other court as to which (i) any appeal that has been taken has been finally determined or dismissed, or (ii) the time for appeal has expired and no appeal has been filed timely. In the case of an order of the Bankruptcy Court, the time for appeal, for purposes of this definition, shall be the time permitted for an appeal to the District Court.

**2.1.34 "General Unsecured Claim"** means any Claim against the Debtor that is not (a) an Other Priority Unsecured Claim, (b) an Administrative Expense Claim, (c) a Professional Fee Claim, (d) a Priority Claim, (e) a Secured Claim, (f) any Claim that constitutes an Interest, and (g) entitled to priority treatment under the Bankruptcy Code or any order of the Bankruptcy Court.

**2.1.35 "*Holder*"** means a holder of a Claim or Interest, as applicable.

**2.1.36 "*Impaired*"** shall have the meaning ascribed thereto in section 1124 of the Bankruptcy Code.

**2.1.37 "Interest"** means any equity security (as defined in section 101(16) of the Bankruptcy Code) in the Debtor.

**2.1.38 "*Initial Distribution Date*"** means the Effective Date.

**2.1.39 "*Lien*"** has the meaning set forth in section 101(37) of the Bankruptcy Code.

**2.1.40 Other Priority Unsecured Claim**: Any Claim, other than an Administrative Claim, Professional Fee Claim, or a Priority Tax Claim, which is entitled to priority under Bankruptcy Code section 507(a).

**2.1.41 "*Person*"** means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code) or other entity.

**2.1.42 "*Plan*"** means this SubChapter V Chapter 11 Plan of Reorganization as the same may hereafter be corrected, amended, supplemented, restated, or modified.

**2.1.43 "*Priority Claim*"** means a Claim entitled to priority under the provisions of section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim or a Priority Tax Claim.

**2.1.44 "*Priority Tax Claim*"** means a Claim against the Debtor that is of a kind specified in sections 507(a)(8) of the Bankruptcy Code.

**2.1.45 "*Priority Wage Claim*"** means a Claim against the Debtor that is of a kind specified in sections 507(a)(4) of the Bankruptcy Code.

**2.1.46 *Professional Compensation*"** *means* (1) any amount that the Bankruptcy Court allows pursuant to section 330 of the Bankruptcy Code as compensation earned, and

reimbursement of expenses incurred, by professionals employed by the Debtor and (ii) any amounts the Bankruptcy Court allows pursuant to sections 503(b)(3) and (4) of the Bankruptcy Code in connection with the making of a substantial contribution to the Bankruptcy Case.

**2.1.47 "*Record Date*"** means any date established in the Confirmation Order or any other Final Order of the Bankruptcy Court for determining the identity of holders of Allowed Claims entitled to Distributions under this Plan. If no Record Date is established in the Confirmation Order or any other order of the Bankruptcy Court prior to the Confirmation Date, then the Record Date shall be the Confirmation Date.

**2.1.48 "*Record Holder*"** means the Holder of a Claim as of the Record Date.

**2.1.49 "*Related Parties*"** means with, respect to any Person or Entity, such Person's or Entity's direct and indirect current and former affiliates, subsidiaries, shareholders, partners (including general partners and limited partners), investors, managing members, members, officers, directors, principals, employees, managers, controlling persons, agents, attorneys, financial advisors, real estate advisors, investment bankers, Professionals, advisors, and representatives, each in their capacity as such.

**2.1.50** "***Reorganized Debtor***" means the Debtor on and after the Confirmation Date.

**2.1.51 "*Retained Action*"** means all claims, Causes of Action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which the Debtor or the Debtor's Estates may hold against any Person, including, without limitation, (i) claims and Causes of Action brought prior to the Effective Date, (ii) claims and Causes of Action against any Persons for failure to pay for products or services provided or rendered by the Debtor, (iii) claims and Causes of Action relating to strict enforcement of the Debtor's intellectual property rights, including patents, copyrights and trademarks, (iv) claims and Causes of Action seeking the recovery of the Debtor's accounts receivable or other receivables or rights to payment created or rising in the ordinary course of the Debtor's business, including without limitation, claim overpayments and tax refunds, and (v) all Causes of Action that are Avoidance Actions.

**2.1.52 "*Schedules*"** means the Schedules of Assets and Liabilities that the Debtor filed in this Bankruptcy Case, as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009.

**2.1.53 "*Secured Claim*"** means a Claim against the Debtor to the extent secured by a Lien on any property of the Debtor on the Petition Date to the extent of the value of said property as provided in section 506(a) of the Bankruptcy Code.

**2.1.54 "*Statutory Interest"*** shall mean, unless the Bankruptcy Court determines otherwise at the Confirmation Hearing, for all Holders who are entitled to interest under 11 U.S.C. § 511, including the Holder of an Allowed Priority Tax Claim who is entitled to interest under U.S.C. § 511, the rate of interest charged by such Holders under non-bankruptcy state or federal law as of the Confirmation Date.

**2.1.55 "*Subordinated Claim*"** means any Unsecured Claim that is subordinated in priority to all other Allowed Unsecured Claims pursuant to the provisions of section 510 of the Bankruptcy Code or other applicable law.

**2.1.56 "*Unimpaired*"** means, with respect to a Class of Claims or Interests, any Class that is not Impaired.

**2.1.57 "*Unsecured Claim*"** means any Claim against the Debtor that is not a Secured Claim, a Priority Claim, a Priority Tax Claim, or an Administrative Expense Claim.

**2.2 *Time***. Whenever the time for the occurrence or happening of an event as set forth in this Plan falls on a day which is a Saturday, Sunday, or legal holiday under the laws of the United States of America or the State of Georgia, then the time for the next occurrence or happening of said event shall be extended to the next day following which is not a Saturday, Sunday, or legal holiday.

**2.3 *Events of Default*.** Unless otherwise specifically provided under the Plan, in the event of a default by the Debtor in payments under the Plan or otherwise, the Holder must send written notice ("Default Notice") to the Debtor at the address of record for the Debtor as reflected on the docket for this Bankruptcy Case, unless the Debtor provided the Holder with a written notice of a change of address. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default, as well as notice that the Debtor have fifteen (15) days (in the case of a monetary default) and thirty (30) days (in the case of a non-monetary default) from receipt by the Debtor and the Debtor's counsel of the Default Notice (or the following business day if the 15th or 30th day does not fall on a Business Day) to cure such default (and the address for payment, which will accept overnight deliveries, in the event of a monetary default). The Holder must send such Default Notice to the Debtors via certified mail or recognized overnight carrier with a copy via email or fax and

certified mail to Paul Reece Marr, Esq., or to such other attorney as the Reorganized Debtor may notify the Holder in writing, at the address reflected in the then current directory of the State of Bar of Georgia. The Debtor shall have fifteen (15) days or thirty (30) days (as applicable) from the Debtor's and the Debtor's counsel's receipt of the Default Notice to cure such default. Receipt by the Debtor's attorney shall not be deemed receipt by the Debtor of the required Default Notice. Notwithstanding anything to the contrary in the Plan or otherwise, a default under one Class of Claims or sub-class of Claims shall not constitute a default under any other Class of Claims or sub-class of Claims. If the Reorganized Debtor does not cure said default within such time frame, then the claimant may exercise any and all rights and remedies that it may have under applicable law and/or seek such relief as may be appropriate in this Court. In addition, the Court may retain jurisdiction to hear certain matters even after the case has been closed.

**2.4** ***Notices.*** All notices under the Plan shall be in writing. Unless otherwise specifically provided herein, all notices shall be sent to the Debtor via U.S. Certified Mail Return Receipt or by recognized overnight carrier to the address of record for the Debtors in this Bankruptcy Case, unless the Debtor provided such Holder with written notice of change of address for the Debtor, with a copy via email and certified mail to Paul Reece Marr, Esq., or such other attorney as the Reorganized Debtor shall notify Holder in writing, at the address reflected in the then current directory of the State Bar of Georgia. Receipt of notice by the Reorganized Debtor's attorney shall not be deemed receipt by the Debtor of the required notice. Notice to creditors may be provided (a) at the address set forth on the proof of claim filed by such Holder, (b) at the address set forth in any written notices of address change delivered to the Debtor after the date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and the Debtor have not received a written notice of a change of address, or (d) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtor's books and records. Notices shall be deemed received: (i) on the day transmitted if sent via fax or email and (ii) on the day delivered if sent via nationally recognized overnight delivery service or Certified Mail Return Receipt.

## ARTICLE 3
## CLASSIFICATION OF CLAIMS AND INTERESTS

**3.1** ***Summary.*** The categories of Claims and Interests set forth below classify all Claims against the Debtor for all purposes of this Plan. A Claim or Interest shall be deemed classified in a particular Class only to the extent the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. The treatment with respect to each Class of Claims and Interests provided for in Article 4 shall be in full and complete satisfaction, release and discharge of such Claims and Interests.

**3.2** ***Classes*:**

**3.2.1** **Class 1** shall be the Secured Claim of Highland Hill Capital LLC to the extent allowed as a secured claim under § 506 of the Bankruptcy Code.

**3.2.2** **Class 2** shall be the Secured Claim of EBF Partners, LLC d/b/a Everest Business Funding to the extent allowed as a secured claim under § 506 of the Bankruptcy Code.

**3.2.3** **Class 3** shall be the Secured Claim of Trofeo Capital LLC to the extent allowed as a Secured Claim under § 506 of the Bankruptcy Code.

**3.2.4** **Class 4** shall be the Secured Claim of AmeriCredit Financial Services, Inc. dba GM Financial to the extent allowed as a Secured Claim under § 506 of the Bankruptcy Code.

**3.2.5** **Class 5** shall be the Secured Claim of LEAF Capital Funding, LLC to the extent allowed as a Secured Claim under § 506 of the Bankruptcy Code.

**3.2.6** **Class 6** shall be the Secured Claim of The Huntington National Bank, assignee of Machinery Finance Resources, to the extent allowed as a Secured Claim under § 506 of the Bankruptcy Code.

**3.2.7** **Class 7** shall be the Claims of the General Unsecured Creditors not otherwise treated herein.

**3.28** **Class 8** shall be the Interest of the Equity Security Holder.

## ARTICLE 4
## TREATMENT OF CLAIMS AND INTERESTS

The Classes, the treatment of each Class, and the voting rights of each Class are set forth

below. Nothing herein shall constitute an admission as to the nature, validity, or amount of such claim. The Debtor reserves the right to object to any and all Claims. The Debtor reserves the right to pay any claim in full at any time in accordance with the terms of the Plan (i.e., at the percentage distribution or amount creditor would receive over the life of the Plan as designated in the Plan and including any accrued and unpaid interest, if any) without prepayment penalty.

**4.1: Secured Claims:**

**Class 1 consists of the Secured Claim of Highland Hill Capital LLC** (“**Highland Hill**”) **to the extent allowed as a secured claim under § 506 of the Bankruptcy Code.** Upon information and belief, Highland Hill asserts a Secured Claim in the amount of $539,949.81 in connection with pre-Petition financings (*see* Proof of Claim # 16 filed April 20, 2026). Attached to the Proof of Claim is a copy of a UCC Financing Statement filed June 20, 2025 pursuant to which Highland Hill asserts a security interest in, among other things, all assets now owned or hereafter acquired including but not limited to accounts, inventory, equipment, and deposit accounts.

Under the Plan, Highland Hill 's Class 1 Claim shall be bifurcated into an Allowed Class 1 Secured Claim in the amount of $350,000.00 and an Allowed Class 7 General Unsecured Claim in the amount of $189,949.81. *See* 11 U.S.C. § 506(a)(l). In full satisfaction of the Allowed Class 1 Secured Claim in the amount of $350,000.00, the Debtor shall pay to the Highland Hill, commencing on the first (1st) Business Day of the first (1st) month immediately following the Effective Date, and continuing on the 1st Business Day of the next fifty nine (59) consecutive calendar months thereafter, for a total of sixty (60) consecutive monthly installment payments of $7,223.03 each, calculated by amortizing the $350,000.00 Allowed Secured Claim amount over 60 months at the interest rate of 8.75 % per annum. In the interim, Highland Hill shall retain its Lien and said Lien shall be valid and fully enforceable to the same extent, validity, and priority as existed on the Filing Date; however, once Highland Hill receives all payments due hereunder as to its Allowed Class 1 Secured Claim, said Lien shall be unenforceable and Highland Hill shall promptly release its Lien and mark the same as satisfied. Class 1 is Impaired by the Plan and is entitled to cast a Ballot.

**Class 2 consists of the Secured Claim of EBF Partners, LLC d/b/a Everest Business Funding (“Everest Business Funding”) to the extent allowed as a secured**

**claim under § 506 of the Bankruptcy Code.** Upon information and belief, Everest Business Funding asserts a Secured Claim in the amount of $328,487.00 in connection with a Revenue Based Financing Agreement dated November 11, 2025 and a related UCC Financing Statement asserting a security interest in, among other things, future receipts. [*See* Proof of Claim # 13 filed April 15, 2026]. However, it appears that the Claim is wholly unsecured. Under the Plan, the Claim shall be treated as an Allowed Class 7 General Unsecured Claim and paid accordingly. *See* 11 U.S.C. § 506(a)(1). Everest Business Funding's Liens shall be unenforceable and marked satisfied as of the Effective Date. Class 2 is Impaired by the Plan and is entitled to cast a Ballot.

**Class 3 consists of the Secured Claim of Trofeo Capital LLC to the extent allowed as a secured claim under § 506 of the Bankruptcy Code.** Upon information and belief, Trofeo Capital LLC asserts a Secured Claim in the approximate amount of $138,000.00 in connection with pre-Petition finance agreements asserting a security interest in future receivables. However, it appears that the Claim is wholly unsecured. Under the Plan, the Claim shall be treated as an Allowed Class 7 General Unsecured Claim and paid accordingly. *See* 11 U.S.C. § 506(a)(1). Trofeo Capital LLC's Liens shall be unenforceable and marked satisfied as of the Effective Date. Class 3 is Impaired by the Plan and is entitled to cast a Ballot.

**Class 4 consists of the Secured Claim of AmeriCredit Financial Services, Inc. dba GM Financial to the extent allowed as a secured claim under § 506 of the Bankruptcy Code.** GM Financial asserts a claim in the amount of $2,929.27 secured by a title lien on a 2015 Chevrolet Truck Silverado 2500. Upon information and belief, the Claim is fully secured. Monthly installment payments are in the amount of $429.85 and they are current. Under the Plan, the Debtor shall retain possession and use of the vehicle and shall continue to make the monthly installment payments as and when they come due under the terms of the pre-Petition loan documents. GM Financial shall retain its Lien on the vehicle and said Lien shall be valid and fully enforceable to the same extent, validity, and priority as existed on the Filing Date; however, once GM Financial receives all payments due as to its Allowed Class 4 Secured Claim it shall promptly release its Lien and mark the same as satisfied. Class 4 is not Impaired by the Plan and is not entitled to cast a Ballot.

**Class 5 consists of the Secured Claim of LEAF Capital Funding, LLC to the extent allowed as a secured claim under § 506 of the Bankruptcy Code.** LEAF Capital Funding, LLC ("**LEAF Capital**") asserts a claim in the amount of $9,948.02 in connection with a pre-

Petition Finance Agreement regarding certain equipment used by the Debtor in the operation of its business. [*See* Proof of Claim # 5 filed March 2, 2026]. Upon information and belief, the Claim is fully secured. Monthly installment payments are in the amount of $551.89 and they are current. Under the Plan, the Debtor shall retain possession and use of the equipment and shall continue to make the monthly installment payments as and when they come due under the terms of the pre-Petition loan documents. LEAF Capital shall retain its Lien on the equipment and said Lien shall be valid and fully enforceable to the same extent, validity, and priority as existed on the Filing Date; however, once LEAF Capital receives all payments due as to its Allowed Class 5 Secured Claim it shall promptly release its Lien and mark the same as satisfied. Class 5 is not Impaired by the Plan and is not entitled to cast a Ballot.

**Class 6 consists of the Secured Claim of The Huntington National Bank, assignee of Machinery Finance Resources, to the extent allowed as a secured claim under § 506 of the Bankruptcy Code.** The Huntington National Bank, assignee of Machinery Finance Resources, asserts a claim in the amount of $121,657.66 in connection with a pre-Petition Equipment Finance Agreement regarding certain equipment used by the Debtor in the operation of its business. [*See* Proof of Claim # 17 filed April 20, 2026]. Upon information and belief, the Claim is fully secured. Monthly installment payments are in the amount of $2,396.30 and they are current. Under the Plan, the Debtor shall retain possession and use of the equipment and shall continue to make the monthly installment payments as and when they come due under the terms of the pre-Petition loan documents. The Huntington National Bank shall retain its Lien on the equipment and said Lien shall be valid and fully enforceable to the same extent, validity, and priority as existed on the Filing Date; however, once The Huntington National Bank receives all payments due as to its Allowed Class 6 Secured Claim it shall promptly release its Lien and mark the same as satisfied. Class 6 is not Impaired by the Plan and is not entitled to cast a Ballot.

**4.2: Unsecured Claims:**

**Class 7 shall consist of General Unsecured Claims not otherwise treated herein.** Class 7 consists of General Unsecured Claims not otherwise treated herein. The Debtor believes but does not warrant that attached hereto as **Exhibit A** is a list of all General Unsecured Claims in the aggregate amount of $1,132,831.96.

***4.2.1: Confirmation under Section 1191(a)***

If the Plan is confirmed under section 1191(a) of the Bankruptcy Code, the Debtor shall

pay to the Class 7 General Unsecured Creditors holding Allowed Claims, in full satisfaction of their respective Allowed Unsecured Claims, a *pro rata* share of $18,750.00 per calendar quarter, being the average quarterly net disposable income, commencing on the 1st Business Day of the 1st calendar quarter immediately following the Effective Date, and continuing on the 1st Business Day of each calendar quarter thereafter, until the Debtor has made a total of 12 quarterly installment payments. Class 7 is Impaired by the Plan and is entitled to cast Ballots. For illustrative purposes only, if the Plan is confirmed on November 5, 2026, then the Effective Date of the Plan would be December 7, 2026. Quarterly Plan payments to the Class 7 creditors would begin on January 4, 2027, being the 1st Business Day of the 1st calendar quarterfollowing the Effective Date, and continuing on the 1st Business Day of the next 11 calendar quarters thereafter.

***4.2.2: Confirmation under Section 1191(b)***

If the Plan is confirmed under section 1191(b) of the Bankruptcy Code, Class 7 shall be treated the same as if the Plan was confirmed under section 1191(a) of the Bankruptcy Code.

A copy of the Debtor's budget showing projected disposable income is attached to this Plan as **Exhibit B**.

**4.3: Class 8 - Equity Interests.**

This class consists of the Interests of the Debtor's Equity Holder Robert S. Yancey. The Equity Holder will retain his Interest in the Reorganized Debtor as such Interest existed as of the Petition Date. This class is not impaired and is not eligible to vote on the Plan.

Notwithstanding anything else in the Plan to the contrary, any Claim shall be reduced by any payment received by the creditor holding such Claim from any third party or other obligor and the Debtor's obligations thereunder shall be reduced accordingly.

## ARTICLE 5
## TREATMENT OF UNCLASSIFIED CLAIMS

**5.1** ***Summary***. Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Claims against the Debtor are not classified for purposes of voting on or receiving Distributions under the Plan. Holders of such Claims are not entitled to vote on the Plan. All such Claims are instead treated separately in accordance with Article 5 of the Plan and in accordance with the requirements set forth in sections 1129(a)(9)(A) of the Bankruptcy Code.

**5.2** ***Debtor's Counsel.*** The office of Paul Reece Marr, P.C. (the "**Law Firm**") represents the Debtor as bankruptcy counsel in this bankruptcy case. The Law Firm shall file a Fee Application and the Debtor shall pay the amounts approved by the Court when the Court enters an order or orders approving the Law Firm's Fee Application unless otherwise agreed to by the Law Firm. The Law Firm anticipates a Fee Application in the approximate amount of $30,000.00 above and beyond the $25,000.00 pre-Petition retainer.

**5.3** ***Administrative Expense Claims***. Subject to the provisions of sections 328, 330(a) and 331 of the Bankruptcy Code, each holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash on the latest of (1) the Effective Date, (ii) as soon as practicable after the date on which such Claim becomes an Allowed Administrative Expense Claim, (iii) upon such other terms as may be agreed upon by such holder and the Debtor, (iv) if the Plan is confirmed under section 1191(b) of the Bankruptcy Code, pro-rata over the period (a) starting on the first day of the month immediately following the month in which the order on the application by the holder of an Allowed Administrative Expenses Claim for compensation became a Final Order and (b) ending on the first day of the month in which the Final Distribution is due, or (v) as otherwise ordered by the Bankruptcy Court; provided, however, that Allowed Administrative Expense Claims representing obligations incurred by the Debtor in the ordinary course of business after the Filing Date, or otherwise assumed by the Debtors on the Effective Date pursuant to this Plan, including any tax obligations arising after the Effective Date, will be paid or performed by the Debtor when due in accordance with the terms and conditions of the particular agreements or non-bankruptcy law governing such obligations.

**5.4** ***Proof of Claim for an Administrative Expense Claim***. Except as otherwise provided in this Plan, any Person holding an Administrative Expense Claim, other than an Administrative Expense Claim arising from the operation by the Debtor in the ordinary course of business, shall file a proof of such Administrative Expense Claim with the Bankruptcy Court within thirty (30) days after the Confirmation Date. At the same time any Person files an Administrative Expense Claim, such Person shall also serve a copy of the Administrative Expense Claim upon counsel for the Debtor. Any Person who fails to timely file and serve a proof of such Administrative Expense Claim shall be forever barred from seeking payment of such Administrative Expense Claims by the Debtor or the Estate. However, and notwithstanding anything contained herein to the contrary, the Internal Revenue Service shall not be required to file an Administrative Expense

Claim in order to receive payment for any liability described in Bankruptcy Code sections 503(b)(1)(B) and (C) in accordance with Bankruptcy Code section 503(b)(1)(D).

**5.5** ***Professional Fees***. Any Person seeking an award by the Bankruptcy Court of Professional Compensation shall file a final application with the Bankruptcy Court for allowance of Professional Compensation for services rendered and reimbursement of expenses incurred through the Effective Date within thirty (30) days after the Confirmation Date or by such other deadline as may be fixed by the Bankruptcy Court.

**5.6** ***Priority Wage Claims:*** Upon information and belief, there are no Priority Wage Claims.

**5.7** ***Priority Tax Claims:*** Consistent with § 1129(a)(9)(C) of the Bankruptcy Code and unless otherwise provided herein, each holder of an Allowed Priority Tax Claim shall be paid in full with interest at the statutory interest rate of 7% within 60 months of the Petition Date in equal monthly installment payments beginning on the 1st Business Day of the 1st month immediately following the Effective Date and on the 1st Business Day of each month thereafter until paid in full as provided herein. The Debtor is aware of Priority Tax Claims in the aggregate amount of $21,942.63 as follows: The Internal Revenue Service asserts a Priority Tax Claim in the amount of $14,775.39, Georgia Department of Revenue asserts a Priority Tax Claim in the amount of $1,076.71, and the Douglas County Tax Commissioner asserts a Priority Tax Claim in the amount of $6,090.53. The Debtor estimates that the aggregate amount of the Plan monthly Plan payments to the Priority Tax Claimants will be approximately $474.87.

**5.8** ***Post-Confirmation Professional Fees***. The Debtor may pay professional fees incurred after confirmation of the Plan without Court approval.

## ARTICLE 6
## MEANS FOR THE IMPLEMENTATION OF THE PLAN

**6.1** ***Parties Responsible for Implementation of the Plan.*** Upon confirmation, the Debtor will be charged with administration of the Bankruptcy Case. The Debtor will be authorized and empowered to take such actions as are required to effectuate the Plan. The Debtor will file all post-confirmation reports required by the United States Trustee's office. The Debtor will also file the necessary final reports and may apply for a final decree as soon as practicable after substantial consummation and the completion of the claims analysis and objection process. The Debtor shall be authorized to reopen this case after the entry of a Final Decree to enforce the

terms of the Plan including for the purpose of seeking to hold a party in contempt or to enforce the confirmation or discharge injunction or otherwise afford relief to the Debtor.

**6.2 *Sources of Cash for Distribution*.**

The source of funds for the payments pursuant to the Plan is the future operating revenue of the Debtor and/or sale of assets.

The Plan provides that Debtor shall act as the Disbursing Agent to make payments under the Plan unless Debtors appoint some other person or entity to do so. The Debtor may maintain bank accounts under the confirmed Plan in the ordinary course of business. The Debtor may also pay ordinary and necessary expenses of administration of the Plan in due course.

**6.*3 Preservation of Causes of Action*.** In accordance with section 1123(b)(3) of the Bankruptcy Code, the Debtor will retain and may (but are not required to) enforce all Retained Actions. After the Effective Date, the Debtor, in its sole and absolute discretion, shall have the right to bring, settle, release, compromise, or enforce such Retained Actions (or decline to do any of the foregoing), without further approval of the Bankruptcy Court. The Debtor (or any successors, in the exercise of their sole discretion), may pursue such Retained Actions so long as it is the best interests of the Debtor (or any successors holding such rights of action). The failure of the Debtor to specifically list any claim, right of action, suit, proceeding or other Retained Action in this Plan does not, and will not be deemed to, constitute a waiver or release by the Debtor of such claim, right of action, suit, proceeding or other Retained Action, and the Debtor will retain the right to pursue such claims, rights of action, suits, proceedings and other Retained Actions in their sole discretion and, therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches will apply to such claim, right of action, suit, proceeding or other Retained Actions upon or after the confirmation or consummation of this Plan. The Debtor reserves all causes of actions for breach of any former or now existing agreement or otherwise. The Debtor specifically reserves any cause of action against any of the Debtor's account debtors related to underpayment or non-payment of any fees, or other monies or receivables due. The Plan shall not be deemed a waiver of any right of the Debtor to collect any receivable or right to payment under any applicable laws. The Debtor expressly reserves the right to exercise any and all remedies available to the Debtor regarding its accounts receivable or rights to payment at law or in equity, at such time or times as the Debtor from time to time may elect. This Plan is filed with a full reservation of rights. Any failure by the Debtor to assert or set forth the occurrence of any other default or

events of default which may have occurred shall not be deemed to be a waiver, release or estoppel of such other default or event of default. The Debtor hereby expressly reserves the right to declare any such other default or event of default and to take such other action as the Debtor may be entitled to applicable law. No delay on the part of the Debtor in exercising any right or remedy shall operate as a waiver in whole or in part of any right or remedy. This Plan is filed with a full reservation of rights.

**6.4** ***Effectuating Documents, Further Transactions.*** The Debtor is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such action as may be necessary, desirable or appropriate to effectuate and further evidence the terms and conditions of this Plan or to otherwise comply with applicable law.

***6.5 Exemption from Certain Transfer Taxes and Recording Fees.*** Pursuant to 11 U.S.C. § 1146(a), O.C.G.A. §48-6-65(a)(2), Ga. Comp. R. & Regs. R. 560-11-8.14 and any other applicable laws, codes or regulations, any transfers from the Debtor to any other Person or entity pursuant to or in contemplation of this Plan, or any agreement regarding the transfer of title to or ownership of any of the Debtor's real or personal property will not be subject to any document recording tax, stamp tax, conveyance fee, sales tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment. Without limitation of the foregoing, the Confirmation Order may direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

***6.6 Further Authorization.*** The Debtor shall be entitled to seek such orders, judgments, injunctions and rulings as they reasonably deem necessary or desirable to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

**6.7** ***Liabilities.*** The Debtor will not have any liabilities except those expressly stated or assumed under the Plan. The Debtor will be responsible for all expenses incurred by the Debtor in the ordinary course of business after the Filing Date, and those expenses will be paid in the ordinary course of business as they become due or as agreed upon by holders of the expense claim.

## ARTICLE 7
## DISTRIBUTIONS

**7.1** ***Disbursing Agent***. Unless otherwise expressly provided for herein, all Distributions under this Plan shall be made by the Debtor or its agents.

**7.2** ***Distributions of Cash***. Except as otherwise provided for herein, any Distribution of Cash made by the Debtor pursuant to this Plan shall, at the Debtor's option, be made by check drawn on a domestic bank or by wire transfer from a domestic bank or in any other form of cash or cash equivalent.

**7.3** ***No Interest on Claims or Interests***. Unless otherwise specifically provided for in this Plan, the Confirmation Order, or a post-petition agreement in writing between the Debtor and a Holder, post-petition interest shall not accrue or be paid on Claims, and no Holder shall be entitled to interest accruing on or after the Filing Date on any Claim. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final determination is made when and if such Disputed Claim becomes an Allowed Claim.

**7.4** ***Delivery of Distributions***. The Distribution to a Holder of an Allowed Claim shall be made by the Debtor (a) at the address set forth on the proof of claim filed by such Holder, (b) at the address set forth in any written notices of address change delivered to the Debtors after the date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and the Debtor have not received a written notice of a change of address, or (d) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtor's books and records. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the Debtor is notified by such Holder in writing of such Holder's then-current address, at which time the Debtor shall recommence Distributions to such Holder without interest but further provided that (i) any distributions not claimed within 6 months of return shall be irrevocably retained by the Debtor and (ii) such Holder shall waive its right to such Distributions. All Distributions returned to the Debtor and not claimed within six (6) months of return shall be irrevocably retained by the Debtor notwithstanding any federal or state escheat laws to the contrary.

If any Distribution on an Unsecured Claim ("**Unsecured Distribution**") is tendered by the Debtor to a Holder of an Unsecured Claim and returned, refused or otherwise improperly returned ("**Unsecured Distribution Refusal**"), the Debtor shall not be responsible for making

any further Unsecured Distribution on account of such Unsecured Claim. Accordingly, in the event of an Unsecured Distribution Refusal, the Debtor shall be relieved of any obligation to make said payment or Distribution and the Debtor is relieved of any obligation to make further payments or Distributions on such Unsecured Claim under the Plan.

If any Distribution on a Secured Claim or Priority Claim ("**Secured or Priority Distribution**") is tendered by the Debtor to a Holder of a Secured Claim or Priority Claim and returned, refused or otherwise improperly returned ("**Secured or Priority Distribution Refusal**"), the Holder of such Secured Claim or Priority Claim, as applicable, shall be deemed to have waived its right to such tendered payment or Distribution and such tendered payment or Distribution shall be deemed satisfied. In the event of a Secured or Priority Distribution Refusal, any obligation of the Debtor to make any additional or further payment on such Secured Claim or Priority Claim shall be tolled until such time as: (i) notice is provided to the Debtor that the Holder of such Secured Claim or Priority Claim seeks to receive payments from the Debtors on the Secured Claim or Priority Claim or otherwise seeks to enforce the Debtor's obligations under the Plan or otherwise enforce the Secured Claim or Priority Claim and (ii) any dispute regarding the Secured or Priority Distribution Refusal and its implications is resolved by agreement of the parties or the Bankruptcy Court (the "**Tolling Period**"). Only in the event of such notice to the Debtor shall the Debtors' obligations to perform as to the applicable Secured Claim or Priority Claim resume. The Tolling Period shall: (i) extend the term of the payments on such Secured Claim or Priority Claim and (ii) bar any interest from accruing on the Secured Claim or Priority Claim until such time as any dispute regarding the Secured or Priority Distribution Refusal shall be resolved by a Final Order of the court. Notwithstanding anything in the Plan or otherwise to the contrary, no provision allowing the imposition of late fees, default interest, late charges, damages, or costs and fees against the Debtor or the Debtor's property shall be applicable during the Tolling Period or any period during which a dispute regarding a Tolling Period is being resolved. For purposes of clarification, the Debtor shall not be required to make any lump sum cure of payments or Distributions which would have otherwise come due during the Tolling Period or any period during which a dispute regarding a Tolling Period is unresolved, and the Debtor shall recommence Distributions upon the resolution of such on the terms in the Plan as tolled.

**7.5** ***Distributions to Holders as of the Record Date.*** All Distributions on Allowed

Claims shall be made to the Record Holders of such Claims. The Debtor shall have no obligation to recognize any transfer of any Claim occurring after the Record Date. The Debtor shall instead be entitled to recognize and deal for all purposes under this Plan with the Record Holders as of the Record Date.

**7.6** ***Fractional Dollars***. Any other provision of this Plan notwithstanding, the Debtor shall not be required to make Distributions or payments of fractions of dollars. Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, at the Debtor's option the actual payment may reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

**7.7** ***Withholding Taxes***. The Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions under this Plan shall be subject to any such withholding and reporting requirements.

## ARTICLE 8
## PROCEDURES FOR TREATING AND RESOLVING DISPUTED CLAIMS

**8.1** ***Objections to Claims***. Nothing herein shall constitute an admission as to the nature, validity, or amount of any Claim. The Debtor reserves the right to object to any and all Claims, provided, however, that the Debtor shall not be entitled to object to Claims that have been Allowed by a Final Order entered by the Bankruptcy Court prior to the Effective Date or that are Allowed by the express terms of this Plan.

**8.2** ***No Distributions Pending Allowance.*** Except as otherwise provided herein, no Distributions will be made with respect to any portion of a Claim unless and until (i) no objection to such Claim has been filed, or (ii) any objection to such Claim has been settled, withdrawn or overruled pursuant to a Final Order of the Bankruptcy Court.

**8.3** ***Resolution of Claims Objections***. On and after the Effective Date, the Debtor shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Claims without approval of the Bankruptcy Court.

## ARTICLE 9
## UNEXPIRED LEASES AND EXECUTORY CONTRACTS

***9.1. Provisions Regarding Executory Contracts.***

Any unexpired leases or executory contracts which are not expressly assumed under the Plan shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code on the Effective Date. Under the terms of the Plan, a proof of claim for damages arising from such rejection must be filed in compliance with the Bankruptcy Rules on or before sixty (60) days after the Confirmation Date. Any claims which are not timely filed will be disallowed and discharged. The Debtor assumes as of the Effective Date its equipment leases with Leaf Capital Funding, LLC, PNC Equipment Finance, LLC, The Huntington National Bank, assignee of Machinery Finance Resources, and US Bank Equipment Finance.

## ARTICLE 10
## EFFECT OF PLAN ON CLAIMS AND INTERESTS

***10.1 Vesting of Debtors' Assets***. Except as otherwise explicitly provided in the Plan, upon the Court's entry of the Confirmation Order, all property comprising the Estate (including Retained Actions, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall revest in the Debtor free and clear of all Claims, Liens, charges, encumbrances, rights and Interests of creditors and equity security holders, except as specifically provided in the Plan. As of the earlier of the Effective Date and the entry of a Final Decree, the Debtor may operate its business and use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and Confirmation Order.

**10.2 *Discharge of the Debtor.*** Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in the Plan or in the Confirmation Order, the Distributions and rights that are provided in the Plan shall be in complete satisfaction, discharge, and release of all Claims and Causes of Action against the Debtor, whether known or unknown, including any and all liabilities of Debtor, Liens on the Debtors' assets, obligations of the Debtors, rights against the Debtor, and Interests in the Debtors or their Estates that arose prior to the Effective Date regardless of whether a claimant accepted or rejected the Plan.

Upon entry of a Confirmation Order, the provisions of the Plan bind: (a) the Debtor, (b) any entity acquiring property under the Plan, (c) any creditor, (d) any claimant of or against the Debtor, and (e) any party to an executory contract with Debtors, whether or not the claim or interest of such creditor or equity holder is impaired under the Plan, and whether or not such creditor or equity holder has accepted the Plan.

***10.3 Setoffs***. The Debtor may, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Debtor may have now or in the future against such Holder; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such claim that the Debtor may have against such Holder.

***10.4 Internal Revenue Service ("IRS")***. Notwithstanding anything contained in the Plan to the contrary, the Debtors shall not be discharged from estimated or unsatisfied tax obligations to the IRS.

Notwithstanding anything to the contrary contained in the Plan, any discharge of the claims of the IRS shall not be effective until all payments provided for the IRS contemplated within the Plan have been made. Notwithstanding anything to the contrary contained in the Plan, nothing shall affect the rights of the IRS to assert setoff and recoupment and such rights are expressly preserved. Notwithstanding anything to the contrary contained in the Plan, the Plan shall not release any non-debtor party, or bar or enjoin the IRS from the assessment and collection of any taxes owed, including any trust fund recovery penalties.

Notwithstanding anything to the contrary contained in the Plan, failure by the Debtor to make any payment to the IRS pursuant to the terms of the confirmed Plan shall be an event of default. If the Debtor fails to cure an event of default within fifteen (15) days after receipt of a written notice of default by the IRS to the Debtor and its attorney, then the administrative collection powers and rights of the United States, acting through the IRS, will be reinstated as such powers and rights existed prior to the filing of the bankruptcy petition by the Debtor and the IRS may (a) engage in administrative collection activity, (b) institute a collection action to enforce and collect the entire amount of its outstanding tax claim; (c) exercise and pursue any and all available remedies any and all rights and remedies it may have under applicable non-bankruptcy law or regulation without further leave of Court; and/or (d)

seek such relief as may be appropriate. The Debtor shall be deemed to have received a written notice of default hereunder on the third (3rd) business day following the date of mailing of the same via Regular U.S. Mail, proper postage affixed.

***10.5 Injunction*. Upon entry of a Confirmation Order in this case, except as may specifically be otherwise provided for in this Plan, the Confirmation Order shall act as a permanent injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim or Cause of Action except as provided for under this Plan against: (1) the Debtor, or (2) against any property of Debtor. Such injunction shall survive the closure of the Bankruptcy Case and this Court shall retain jurisdiction to enforce such injunction.**

***10.6 Effect of Confirmation.***

*10.6.1* **Binding Effect**. On the Confirmation Date, the provisions of this Plan shall be binding on the Debtor, the Estate, all Holders of Claims against or Interests in the Debtor, and all other parties-in-interest whether or not such Holders are Impaired and whether or not such Holders have accepted this Plan. Creditors shall have no right to enforce a Claim against the Debtor, even following a default under the Plan, except to the extent and amount that any Claim of such creditor is provided for and then due under the Plan.

*10.6.2* **Effect of Confirmation on Automatic Stay.** Except as provided otherwise in this Plan, from and after the Effective Date, the automatic stay of § 362(a) of the Bankruptcy Code shall terminate.

*10.6.3* **Filing of Reports.** The Debtor shall file all reports required by the Bankruptcy Code, Bankruptcy Rules, U.S. Trustee guidelines, and the rules and orders of the Bankruptcy Court.

*10.6.4* **Post-Effective Date Retention of Professionals.** Upon the Effective Date, any requirement that professionals comply with §§ 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate, and the Debtors may employ and pay professionals in the ordinary course of business.

## ARTICLE 11
## EFFECTIVE DATE

**11.1** ***Conditions to the Effective Date****.* The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with

this Plan.

*11.1.1* The Confirmation Order shall not have been vacated, reversed or modified and, as of the Effective Date, shall not have been stayed;

*11.1.2* All documents and agreements to be executed on the Effective Date or otherwise necessary to implement this Plan shall be in form and substance that is acceptable to the Debtor in its reasonable discretion.

*11.1.3* The Debtor shall have received any authorization, consent, regulatory approval, ruling, letter, opinion, or document that may be necessary to implement this Plan and that is required by law, regulation, or order.

**11.2 *Waiver of Conditions to Confirmation or Consummation*.** The conditions set forth in Article 11.1 of this Plan may be waived, in whole or in part, by the Debtor without any notice to any other parties in interest or the Bankruptcy Court and without a hearing. The failure to satisfy or waive any condition to the Confirmation Date or the Effective Date may be asserted by the Debtor in its sole discretion regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtor). The failure of the Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

**11.3** ***Notice of Effective Date***. Within seven (7) days of the Effective Date, the Debtor shall file a notice of occurrence of the Effective Date with the Bankruptcy Court.

## ARTICLE 12
## RETENTION AND SCOPE OF JURISDICTION OF THE BANKRUPTCY COURT

***12.1 Retention of Jurisdiction***. Subsequent to the Effective Date, the Bankruptcy Court shall have or retain jurisdiction for the following purposes:

*12.1.1* To adjudicate objections concerning the allowance, priority or classification of Claims and any subordination thereof, and to establish a date or dates by which objections to Claims must be filed to the extent not established herein;

*12.1.2* To liquidate the amount of any disputed, contingent or unliquidated Claim, to estimate the amount of any disputed, contingent or unliquidated Claim, to establish the amount of any reserve required to be withheld from any distribution under this Plan on account of any disputed, contingent or unliquidated Claim;

*12.1.3* To resolve all matters related to the rejection, and assumption and/or

assignment of any of the Debtor's executory contracts or unexpired leases;

*12.1.4* To hear and rule upon all Retained Actions, Avoidance Actions and other Causes of Action commenced and/or pursued by the Debtor [1];

*12.1.5* To hear and rule upon all applications for Professional Compensation;

*12.1.6* To remedy any defect or omission or reconcile any inconsistency in this Plan, as may be necessary to carry out the intent and purpose of this Plan;

*12.1.7* To construe, interpret, or enforce any provisions in this Plan, and to issue such orders as may be necessary for the implementation, execution and consummation of this Plan, to the extent authorized by the Bankruptcy Court;

*12.1.8* To adjudicate controversies arising out of the administration of the Estate or the implementation of this Plan;

*12.1.9* To make such determinations and enter such orders as may be necessary to effectuate all the terms and conditions of this Plan, including the Distribution of funds from the Estate and the payment of claims;

*12.1.10* To determine any suit or proceeding brought by the Debtor to recover property under any provisions of the Bankruptcy Code;

*12.1.11* To hear and determine any tax disputes concerning the Debtor and to determine and declare any tax effects under this Plan;

*12.1.12* To determine such other matters as may be provided for in this Plan or the Confirmation Order or as may be authorized by or under the provisions of the Bankruptcy Code;

*12.1.13* To determine any controversies, actions or disputes that may arise under the provisions of this Plan, or the rights, duties or obligations of any Person under the provisions of this Plan;

*12.1.14* To adjudicate any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of, or in connection with, any agreement pursuant to which the Debtor sold any assets during the Bankruptcy Case;

*12.1.15* To enter a final decree;

*12.1.16* To enter an order of discharge; and

---

[1] Notwithstanding anything to the contrary in the Plan, the Debtor shall be authorized to file any Retained Action related to the collection of accounts receivable in any state or local court with jurisdiction under applicable state law.

*12.1.17* To enforce and interpret any order or injunctions entered in this Bankruptcy Case.

***12.2 Alternative Jurisdiction***. In the event that the Bankruptcy Court is found to lack jurisdiction to resolve any matter, then the District Court shall hear and determine such matter. If the District Court does not have jurisdiction, then the matter may be brought before any court having jurisdiction with regard thereto. Notwithstanding anything to the contrary herein, the Debtors shall be authorized to bring any action related to a lease, contract or account (including any account receivable due to the Debtor) to which the Debtor is a party in any state or local court having jurisdiction over such action.

***12.3 Final Decree***. The Bankruptcy Court may, upon application of the Debtor, at any time after "substantial consummation" of the Plan as defined in §1101(2) of the Bankruptcy Code, enter a final decree in the case, notwithstanding the fact that additional funds may eventually be distributed to parties in interest. In such event, the Bankruptcy Court may enter an Order closing this case pursuant to section 350 of the Bankruptcy Code, provided, however, that: (a) the Debtor shall continue to have the rights, powers, and duties set forth in this Plan; (b) any provision of this Plan requiring the absence of an objection shall no longer be required, except as otherwise ordered by the Bankruptcy Court; and (c) the Bankruptcy Court may from time to time reopen the Bankruptcy Case if appropriate for any of the following purposes: (1) administering Assets; (2) entertaining any adversary proceedings, contested matters or applications the Debtor have brought or brings with regard to the liquidation of Assets and the prosecution of Causes of Action; (3) enforcing or interpreting this Plan or supervising its implementation; (4) entering a discharge order; or (5) for other cause. The Debtor shall be authorized to reopen the Bankruptcy Case for purposes of obtaining a discharge after entry of the final decree and the fee associated with the attendant motion to reopen the Debtor's case may be waived.

## ARTICLE 13
## MISCELLANEOUS PROVISIONS

**13.1** ***Modification of the Plan***. The Debtor shall be allowed to modify the Plan pursuant to section 1127 of the Bankruptcy Code to the extent applicable law permits. The Debtor may modify the Plan, before or after confirmation, without notice or hearing, or after such notice and hearing as the Bankruptcy Court deems appropriate, if the Bankruptcy Court finds that the Modification does not materially and adversely affect the rights of any parties in interest which

have not had notice and an opportunity to be heard with regard thereto. In the event of any modification on or before confirmation, any votes to accept or reject the Plan shall be deemed to be votes to accept or reject the Plan as modified, unless the Bankruptcy Court finds that the modification materially and adversely affects the rights of parties in interest which have cast said votes. The Debtor reserves the right in accordance with section 1127 of the Bankruptcy Code to modify the Plan at any time before the Confirmation Date.

**13.2** ***Allocation of Plan Distributions Between Principal and Interest***. To the extent that any Allowed Claim entitled to a Distribution under this Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for United States federal income tax purposes to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

**13.3** ***Applicable Law***. Except to the extent that the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by the laws of the State of Georgia.

**13.4** ***Preparation of Estate Returns and Resolution of Tax Claims*****.** The Debtor shall file all tax returns and other filings with governmental authorities and may file determination requests under section 505(b) of the Bankruptcy Code to resolve any Disputed Claim relating to taxes with a governmental authority.

**13.5** ***Headings***. The headings of the Articles and the sections of this Plan have been used for convenience only and shall not limit or otherwise affect the meaning thereof.

**13.6** ***Revocation of Plan***. The Debtor reserves the right, unilaterally and unconditionally, to revoke and/or withdraw this Plan at any time prior to entry of the Confirmation Order, and upon such revocation and/or withdrawal this Plan shall be deemed null and void and of no force and effect.

**13.7** ***No Admissions; Objection to Claims*****.** Nothing in this Plan shall be deemed to constitute an admission that any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity or person as being the Holder of a Claim is the Holder of an Allowed Claim, except as expressly provided in this Plan. The failure of the Debtor to object to or examine any Claim for purposes of voting shall not be deemed a waiver of the Debtors' rights to object to or reexamine such Claim in whole or in part.

**13.8** ***No Bar to Suits***. Except as may otherwise be expressly provided in the Plan, neither

this Plan or confirmation hereof shall operate to bar or estop the Debtors from commencing any Cause of Action, or any other legal action against any Holder of a Claim or any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity, whether such Cause of Action, or any other legal action arose prior to or after the Confirmation Date and whether or not the existence of such Cause of Action, or any other legal action was disclosed in any document filed by the Debtor in connection with this Bankruptcy Case or whether or not any payment was made or is made on account of any Claim. Without limitation, the Debtor retains and reserves the right to prosecute Retained Actions.

**13.9** ***Exhibits/Schedules***. All exhibits and schedules to this Plan, and all attachments thereto, are incorporated into and are a part of this Plan as if set forth in full herein.

## ARTICLE 14
## TAX CONSEQUENCES

**TAX CONSEQUENCES RESULTING FROM CONFIRMATION OF THE PLAN CAN VARY GREATLY AMONG THE VARIOUS CLASSES OF CREDITORS AND HOLDERS OF INTERESTS, OR WITHIN EACH CLASS. SIGNIFICANT TAX CONSEQUENCES MAY OCCUR AS A RESULT OF CONFIRMATION OF THE PLAN UNDER THE INTERNAL REVENUE CODE AND PURSUANT TO STATE, LOCAL, AND FOREIGN TAX STATUTES. BECAUSE OF THE VARIOUS TAX ISSUES INVOLVED, THE DIFFERENCES IN THE NATURE OF THE CLAIMS OF VARIOUS CREDITORS, THE TAXPAYER STATUS AND METHODS OF ACCOUNTING AND PRIOR ACTIONS TAKEN BY CREDITORS WITH RESPECT TO THEIR CLAIMS, AS WELL AS THE POSSIBILITY THAT EVENTS SUBSEQUENT TO THE DATE HEREOF COULD CHANGE THE TAX CONSEQUENCES, THIS DISCUSSION IS INTENDED TO BE GENERAL IN NATURE ONLY. NO SPECIFIC TAX CONSEQUENCES TO ANY CREDITOR OR HOLDERS OF AN INTEREST ARE REPRESENTED, IMPLIED, OR WARRANTED. EACH HOLDER OF A CLAIM OR INTEREST SHOULD SEEK PROFESSIONAL TAX ADVICE, INCLUDING THE EVALUATION OF RECENTLY ENACTED OR PENDING LEGISLATION, BECAUSE RECENT CHANGES IN TAXATION MAY BE COMPLEX AND LACK AUTHORITATIVE INTERPRETATION. THE DEBTOR ASSUMES NO RESPONSIBILITY FOR THE TAX EFFECT THAT CONSUMMATION OF THE PLAN**

**WILL HAVE ON ANY GIVEN HOLDER OF A CLAIM OR INTEREST. HOLDERS OF CLAIMS OR INTEREST ARE STRONGLY URGED TO CONSULT THEIR OWN TAX ADVISORS COVERING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN TO THEIR INDIVIDUAL SITUATION.**

Dated: September 22, 2026

Prepared and submitted,
PAUL REECE MARR, P.C.
Debtor's counsel

/s/ Paul Reece Marr
Paul Reece Marr
GA Bar # 471230
6075 Barfield Road
Suite 213
Sandy Springs, GA 30328
770-984-2255
paul.marr@marrlegal.com

SOUTHLAND MANUFACTURING, INC.

/s/ Robert S. Yancey
By: Robert S. Yancey
Its: CEO

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **In re:** | : | |
| | : | **Case No. 26-51755-JWC** |
| **SOUTHLAND MANUFACTURING, INC.,** | : | |
| | : | **SubChapter V Chapter 11** |
| **Debtor,** | : | |
| | : | |

**CERTIFICATE OF SERVICE**

This is to certify that I have on this day electronically filed the foregoing *FIRST AMENDED SUBCHAPTER V CHAPTER 11 PLAN OF REORGANIZATION* using the Bankruptcy Court's Electronic Case Filing program which sends a notice of this document and an accompanying link to this document to all registered parties who have filed appearances in the above captioned case as follows:

Stephen G. Gunby on behalf of Creditor Pinnacle Bank as Successor to Synovus Bank
sgunby@pagescrantom.com

James W. Hays on behalf of Creditor EBF Holdings, LLC dba Everest Business Funding
beau@hayspotter.com

Leon S. Jones
ljones@joneswalden.com, jwdistribution@joneswalden.com;eterrell@joneswalden.com

Leon S. Jones on behalf of Trustee Leon S. Jones
ljones@joneswalden.com, jwdistribution@joneswalden.com;eterrell@joneswalden.com

Matthew Mills on behalf of U.S. Trustee United States Trustee
matthew.e.mills@usdoj.gov

Byron L. Saintsing on behalf of Creditor EBF Holdings, LLC dba Everest Business Funding
bsaintsing@smithdebnamlaw.com, sbutler@smithdebnamlaw.com

A. Todd Sprinkle on behalf of Creditor PNC Equipment Finance, LLC
toddsprinkle@parkerpoe.com, wandaclay@parkerpoe.com;courtneyvolz@parkerpoe.com

Landon Van Winkle on behalf of Creditor EBF Holdings, LLC dba Everest Business Funding
lvanwinkle@smithdebnamlaw.com, nmurray@smithdebnamlaw.com

This the 22nd day of September, 2026.

/s/ Paul Reece Marr
Paul Reece Marr
PAUL REECE MARR, P.C.
6075 Barfield Road
Suite 213
Sandy Springs, GA 30328
770-984-2255
paul.marr@marrlegal.com

**EXHIBIT A**
**KNOWN CLASS 7 GENERAL UNSECURED CLAIMS**

| Name | Claim Amount |
|---|---|
| Absolute Freight | $6,975.00 |
| Advanced Cutting Systems | 4,533.24 |
| Alma Machine Services | 1,208.00 |
| American Express -1107 | 2,972.95 |
| American Express -1002 | 9,695.96 |
| American Express -2004 | 650.24 |
| American Express -6008 | 16,858.79 |
| American General | 212.97 |
| Capital One | 8,031.11 |
| Everest Business Funding (see Class 2) | 328,487.00 |
| Exxon Mobil/Wex Bank | 689.01 |
| Hart Machine Tool | 16,292.16 |
| Hassler Machine | 473.70 |
| Hawkinson, Muchnick & Assocs. | 3,000.00 |
| Highland Hill (see Class 1) | 189,949.81 |
| Infra-Metals | 51,744.40 |
| Internal Revenue Service | 12,000.00 |
| McMaster-Carr Supply Company | 2,317.42 |
| MM Systems Corp. | 14,199.89 |
| Moore, Ingram, Johnson Steele | 2,324.00 |
| New House Products, Inc. | 845.00 |
| Phillips Corporation | 495.00 |
| Phoenix Metals | 16,913.29 |
| Pinnacle Bank as successor to Synovus Bank | 19,278.40 |
| Priority 1, Inc. | 1,730.57 |
| Robert E. Yancey (premises lease arrearage) | 81,000.00 |
| Robert E. Yancey (loan) | 189,000.78 |
| Sidney Lee Welding Supply | 788.88 |
| Southern Aluminum | 1,861.13 |
| Trofeo Capital LLC (see Class 3) | 138,000.00 |

| | |
|---|---|
| Wayne's Metal Fabrication | 9,940.40 |
| Wex Bank | 362.86 |

**Total** **$1,132,831.96**[2]

[2] $476,395.15 if one does not include the claims of Everest Business Funding, Highland Hill, and Trofeo Capital LLC as Class 7 claims.

**EXHIBIT B**
**PROJECTIONS**